## McELHANNON *v.* THE STATE (four cases).

1. The superior courts have jurisdiction to hear and determine certioraries sued out to review the judgments of county courts in criminal cases, and there is nothing in the law to prevent the judges of the former from making such certioraries returnable to regular terms thereof.

2. When a certiorari sued out by one convicted in the county court of a given county is made returnable to a regular term of the superior court of that county, failure to give the solicitor-general of the circuit embracing the same due notice of the sanction of the petition and of the time and place of hearing is cause for dismissal.

3. Upon a review of the case of *Moore* v. *State*, 96 *Ga.* 309, the decision therein is approved as correct.

Argued October 19, — Decided November 27, 1900.

Certiorari.  Before Judge Hart.  Walton superior court.  August term, 1900.

*Russell & Armistead*, for plaintiff in error.
*C. H. Brand, solicitor-general*, and *R. L. Cox*, contra.

LUMPKIN, P. J.  These four cases all turn upon and are controlled by the rulings announced in the headnotes.

1. The main contention of counsel for the plaintiff in error is that the superior courts, as such, have no jurisdiction to hear or determine certioraries sued out to review the judgments of county courts in criminal cases, but that such jurisdiction is vested exclusively in the judges of the superior courts. This contention is based upon various statutory provisions with respect to such certioraries, which have by special enactment been made applicable to the county court of Walton county, in which the present cases originated. The provisions referred to are now, in substance, embodied in the Penal Code, and as no substantial change in their true intent and meaning has, in our opinion, resulted from their codification, we will, for convenience, undertake, save as to a purpose hereinafter appearing, to test the validity of the points now submitted for decision in the light of the present code sections. Sections 766 and 767 provide that the judge of the superior court shall himself issue the writ of certiorari, directed to the county judge, requiring him to send up to "the judge of the superior court a complete and accurate history of the case;" "that the history of the case given by the county judge is his answer;" that it is "subject to correction and traverse as prescribed

in civil cases, except that the superior-court judge shall try the traverse;" and that "he shall hear and determine the writ and return at any time after ten days notice to the accuser." It was earnestly argued that as the law directs the superior-court judge to require a return to himself of the county judge's answer, imposes upon the former the duty of trying any traverse thereto, and provides for a determination of the case on its merits "at any time after ten days notice to the accuser," it was not contemplated that these certioraries should be made returnable to regular terms of the superior courts or disposed of by those tribunals, but that it was the legislative intention to create and establish "a special tribunal controlled and governed by special laws for the purpose of hearing and disposing of certioraries from county courts." In this connection it was insisted that section 4644 of the Civil Code, requiring the plaintiff in certiorari to give written notice "to the opposite party in interest" of the sanction of the writ, etc., "at least ten days before the sitting of the court to which the same shall be returnable," could have no application to certioraries of the kind under consideration, because the only notice provided for with respect to them is that to be given to "the accuser," and because, these certioraries not being returnable to regular terms of the superior courts, the words "ten days before the sitting," etc., could not possibly be given any practical effect. Counsel further contended that the scheme of all the legislation with regard to certioraries of this class was to expedite the hearing and disposition of the same, and that, for the purpose of effectually accomplishing this end, jurisdiction to try them had been withheld from the superior courts and conferred exclusively upon the judges thereof. Thus, it was urged, all the delays incident to having the certioraries returned to regular terms and dealt with as other certioraries could be and were intended to be avoided.

We admit frankly that the line of argument above outlined is plausible and forcible, but, after much reflection, feel constrained to hold that it does not establish the conclusions stated. While the theory that the General Assembly intended to deprive the superior courts of jurisdiction to try certioraries of this kind is to some extent supported by many of the above-mentioned provisions of the law, we gravely doubt if any such intention actually existed. Other provisions point strongly to the conclusion that it did not. For instance, section 764 of the Penal Code, which deals with such cer-

tioraries, declares that the same may be " disposed of either in term or vacation." The words "in term" could hardly apply to a judge sitting as a special functionary, and the words " or vacation" must necessarily refer to a court which has terms. Again, in section 14 of the original county-court act of 1872, it is declared that " In all cases where the county judge alone tries the case, such superior courts on certiorari may pass such sentence or judgment as is consistent with the law." Acts of 1871-2, p. 296. The words just quoted follow those portions of the act, relating to the return and disposition of county-court certioraries in criminal cases, which have been codified as above indicated. Why use the phrase "such superior courts," if it was designed to deny these courts any jurisdiction whatever in the premises? We might refer to other phraseology in this act tending to support the proposition that there was no such purpose. The most probable conclusion is that the legislature really intended that the jurisdiction should be vested in the superior courts with power, whenever the judges saw proper so to do, to dispose of the cases in vacation. Granting, however, that this is by no means clear or certain, and that there is some confusion in the law, we are entirely free from doubt that the General Assembly could not constitutionally deprive the superior courts of this jurisdiction, even if such had been its actual and expressed intention. Paragraph 5 of section 4, art. 6 of the constitution expressly declares that " They shall have power to correct errors in inferior judicatories by writ of certiorari." Civil Code, § 5846. They can not possibly "correct" such errors in the absence of authority to try and dispose of the writs of certiorari. Having, then, constitutional jurisdiction, it requires no argument to show that it can not be taken from them by statute, even if the lawmaking power may confer concurrent jurisdiction upon some other tribunal. We therefore assert with entire confidence that the superior courts have jurisdiction of cases of this class; and as there is nothing in the law to prevent the judges from making the writs of certiorari returnable to regular terms of the superior courts, we see no reason why they may not lawfully do so. Indeed, we are not aware that a contrary practice has ever been followed.

2, 3. A certiorari of this kind which was in fact made returnable to a designated term of the superior court, as was done in each of the present cases, " became a regular superior-court case," and " un-

doubtedly a criminal case to which the State was a party." This being so, due notice to the solicitor-general of the sanction of the petition for certiorari and of the time and place of hearing was essential. *Moore* v. *State*, 96 *Ga.* 309. We granted counsel for the plaintiff in error leave to review this case. If the above reasoning is sound, it follows as a logical consequence that the decision in *Moore's* case was correct, and we therefore approve it. It makes no practical difference, we think, whether the judge of the superior court issues the writ of certiorari himself or sanctions the petition and orders the clerk to issue it. Certainly the issuing of the writ by the judge necessarily involves a sanction of the petition. In each of the cases now before us the court was right in dismissing the writ of certiorari for want of notice to the solicitor-general.

*Judgment in each case affirmed. All the Justices concurring.*